

NUMBER 13-12-00431-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

IN RE JAMES SUMMERSETT III

On Petition for Writ of Mandamus.

# O P I N I O N

**Before Chief Justice Valdez and Justices Garza and Longoria
Opinion by Chief Justice Valdez**

By petition for writ of mandamus, relator, James Summersett III, seeks to compel the trial court to vacate its order mandating the production of documents. By two issues, Summersett contends that the trial court abused its discretion in compelling discovery because: (1) the documents at issue are not within his "possession, custody, or control" under Texas Rule of Civil Procedure 192.7(b); and (2) discovery was suspended pending final resolution of Summersett's motion to dismiss under the Texas Citizens Participation Act ("TCPA"). *See* Tex. R. Civ. P. 192.7(b) (defining the "possession, custody, or control" of an item under the discovery rules); Tex. Civ. Prac.

& REM. CODE ANN. §§ 27.001–27.011 (West Supp. 2011) (codifying the TCPA, which is an anti-SLAPP (Strategic Lawsuit Against Public Participation) statute that provides for the early dismissal of legal actions that involve the exercise of specified constitutional rights). We deny the petition for writ of mandamus.

## I. BACKGROUND

Real party in interest, Remi Jaiyeola, M.D., brought suit against Summersett and Ruben Garza for tortious interference with existing and prospective business relationships, unfair competition, defamation, and conspiracy. At the time of suit, Summersett was the president and chief executive officer of Knapp Medical Center ("Knapp") and Garza was the vice president of administrative services for Knapp.[1] Jaiyeola is a board-certified gastroenterologist who has privileges and performs surgical procedures at Knapp. She alleged that the defendants made false statements about her regarding patient complaints and her willingness to "take call" for Knapp in order to "cause her [economic] harm, force her out of business and so that both Defendants, individually, could profit through a conspiracy designed to reduce income to their own hospital in order to justify sale of said hospital." Jaiyeola did not bring suit against Knapp.

On March 30, 2012, Jaiyeola served her first set of twenty-four requests for production on Summersett. On May 2, 2012, Summersett responded to the requests for production with multitudinous objections but did not produce any documents in

---

[1] Garza is not a party to this original proceeding.

response to the requests.[2] Summersett's response to the requests for production did not reference ownership or possession, custody, or control of the requested documents.

On May 7, 2012, Summersett filed a motion to dismiss the lawsuit under the TCPA. On May 11, 2012, Summersett filed a motion for leave to file the motion to dismiss. In his motion for leave, Summersett asserted that because he "was never properly served" with Jaiyeola's petition, he did not believe that a motion for leave was required in order for his motion to dismiss to be considered properly filed; however, he was filing the motion for leave "out of an abundance of caution." According to the motion for leave:

> . . . Summersett's Anti-SLAPP Motion to Dismiss involves a statutory deadline to file sixty days after being served. On Monday, May 7, 2012, Summersett learned that the return of service indicates he was personally served on March 5, 2012. If that service was proper (Summersett believes it was not), then sixty days from that date was May 4, 2012. Summersett filed his anti-SLAPP Motion to Dismiss on Monday, May 7, 2012.
>
> . . . To date, Summersett has never been properly served with the summons in this case. While Summersett's ability to contest service of process through a Motion to Quash is no longer an option because he has made an appearance, the fact remains that he was never properly served with Plaintiff's Original Petition. Summersett received his citation and a copy of Plaintiff's Original Petition from co-defendant, Ruben Garza, whom is not Summersett's agent and, therefore, not authorized to accept service on his behalf.
>
> . . . .
>
> . . . Defendant Ruben Garza received Plaintiff's Original Petition on March 5, 2012, for Summersett . . . . It is in the course of Knapp Medical Center's (the "Hospital's") business that Garza routinely accepts service on behalf

---

[2] We note that the rules of discovery required Summersett to "comply with as much of the request to which the party has made no objection unless it is unreasonable under the circumstances to do so before obtaining a ruling on the objection." TEX. R. CIV. P. 193.2; *see also id.* R. 193 cmt.2. We further note that Summersett failed to file a withholding statement regarding any alleged claims of privilege. *See id.* R. 193.3(a).

> of the Hospital . . . . After receipt of Plaintiff's Original Petition, Garza then realized that he and Summersett were being sued in their individual capacity . . . .Though he was never personally served, sometime later, Summersett received Plaintiff's Original petition from Garza.

(footnote omitted). Summersett thus requested an extension of time to file the motion to dismiss.

On May 11, 2012, Jaiyeola filed a motion to compel Summersett to respond to the requests for production and on May 16, 2012, filed a motion for sanctions against Summersett's counsel on grounds that the motion to dismiss was, inter alia, frivolous and brought in bad faith.

On May 21, 2012, Summersett filed a response to the motion to compel. This response asserted that Jaiyeola failed to meet "her burden showing she is entitled to any of the requested documents," that Summersett's tax returns, financial information, and employment file are not discoverable, that Jaiyeola "requests documents which do not belong to Summersett" but instead belong to Knapp, and that discovery was suspended until the trial court rules on Summersett's motion to dismiss. The response did not include the objection that the requested documents were not in Summersett's possession, custody, or control. Summersett's affidavit filed in support of his response to the motion to compel did not address the alleged ownership or possession, custody, or control of the documents subject to the requests for production.

On June 6, 2012, the trial court denied Summersett's motion for leave to file his motion to dismiss and, concomitantly, denied Jaiyeola's motion for sanctions based on the motion to dismiss. Summersett filed an appeal concerning the trial court's denial of

the motion for leave to file the motion to dismiss which we have considered in a separate cause.[3]

On June 11, 2012, Summersett filed his first amended responses and objections to Jaiyeola's requests for production. Summersett included additional objections to the discovery requests but, again, did not produce any documents in response to the requests for production. In his "amended" response to some of the requests, Summersett included the language: "Subject to and without waiving the foregoing objections, Defendant answers: If any [such documents] do exist, they are the property of Knapp Medical Center and/or Knapp Foundation."

That same day, Summersett also filed a supplemental response to the motion to compel. In his supplemental response, he asserted that the requested documents belonged to Knapp or Knapp Foundation and, for the first time, stated that the documents were not in Summersett's possession, custody, or control. He attached an additional affidavit to his supplemental response in which he averred that the documents identified in specified requests for production "are not within my individual personal possession, custody or control, and, therefore I cannot produce them as they are the property of Knapp Medical Center and/or Knapp Foundation."

On June 18, 2012, the trial court held a hearing on the motion to compel. On June 28, 2012, the trial court signed an order granting in part and denying in part Jaiyeola's motion to compel. The trial court sustained Summersett's objections and did not compel the production of documents pursuant to request numbers 3, 4, 9, 14, and 17 through 22. The trial court overruled Summersett's objections and ordered him to

---

[3] *See Summersett v. Jaiyeola*, No. 13-12-00442-CV, 2013 Tex. App. LEXIS ____ (Tex. App.—Corpus Christi June __, 2013, no pet. h.) (dismissing appeal for lack of jurisdiction).

produce documents responsive to request numbers 2, 5 through 8, 10 through 13, 23, and 24. The trial court ordered all documents to be produced in accordance with the parties' agreed protective order.

Summersett asserts that there are no documents responsive to requests 23 and 24, and this assertion is not contested by the real party in interest, thus the only requests that are the subject of this original proceeding are requests 2, 5 through 8, and 10 through 13. In general, these requests for production seek statements made regarding the subject matter of the lawsuit (request for production number 2), documents relating to any complaints against Summersett for the past five years (request for production number 5), documents relating to performance evaluations (request for production number 6), documents relating to complaints from Knapp employees or medical providers against Summersett (requests for production numbers 7 and 8), documents or contracts relating to Summersett's employment by Knapp or Knapp Foundation (requests for production numbers 10 and 11), any documents relating to Summersett's interest in the potential sale of Knapp to South Texas Health Systems (request for production number 12), and any documents relating to Summersett's compensation interest in the potential sale of Knapp to South Texas Health System or its parent company (request for production number 13).

Summersett filed this original proceeding and an emergency motion to stay the trial court's order on Jaiyeola's motion to compel. This Court granted the emergency motion to stay, and requested and received a response to the petition for writ of mandamus from Jaiyeola. Summersett subsequently filed a reply to Jaiyeola's response to the petition for writ of mandamus.

6

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 887 (Tex. 2010) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)*; Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d at 888; *Walker*, 827 S.W.2d at 840. The second requirement for mandamus relief, that the relator has no adequate remedy by appeal, "has no comprehensive definition." *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136).

The scope of discovery is generally within the trial court's discretion. *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). Parties may seek discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action . . . ." TEX. R. CIV. P. 192.3(a). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. The rules governing discovery do not require that the information sought be admissible

7

evidence; it is enough that the information sought appears reasonably calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a).

Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). Specifically, mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). When determining whether the trial court abused its discretion, we are mindful that the purpose of discovery is to seek the truth so that disputes may be decided by what the facts reveal, not by what facts are concealed. *Id.* However, this broad grant is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *In re Am. Optical Corp.*, 988 S.W.2d at 713.

### III. POSSESSION, CUSTODY & CONTROL

In his first issue, Summersett contends that the trial court clearly abused its discretion by ordering Summersett to produce "his employer's documents" that are not within his "possession, custody, or control" under Texas Rule of Civil Procedure 192.7(b) and the Texas Supreme Court's opinion in *In re Kuntz*, 124 S.W.3d 179 (Tex. 2003) (orig. proceeding).[4]

---

[4] Jaiyeola contends that the trial court did not err in ordering the records produced because Summersett failed to timely raise his objection that he did not have possession, custody, or control of the documents. Rule 193 of the Texas Rules of Civil Procedure "imposes a duty upon parties to make a complete response to written discovery based upon all information reasonably available, subject to

8

Rule 192.3 of the Texas Rules of Civil Procedure is the principal rule regarding the scope of discovery. It provides:

> (a)     Generally. In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> (b)     Documents and Tangible Things. A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents and tangible things (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations) that constitute or contain matters relevant to the subject matter of the action. *A person is required to produce a document or tangible thing that is within the person's possession, custody, or control.*

---

objections and privileges." TEX. R. CIV. P. 193 cmt. 1. Rule 193.2 specifically requires objections to written discovery to be in writing, stating the specific legal or factual basis for the objection and the extent to which the party is refusing to comply with the request. TEX. R. CIV. P. 193.2(a); *Bielamowicz v. Cedar Hill I.S.D.*, 136 S.W.3d 718, 723 (Tex. App.—Dallas 2004, pet. denied). The objections must be made "within the time for response." TEX. R. CIV. P. 193.2(a); *In re Gore*, 251 S.W.3d 696, 700–01 (Tex. App.—San Antonio 2007, no pet.) (stating that failure to timely plead and prove privilege from discovery can operate as waiver); *see also* TEX. R. APP. P. 33.1(a) (requiring timely objection to trial court in order to preserve the right to appeal). Responses to requests for production are due within thirty days after the date of service. TEX. R. CIV. P. 196.2(a). Rule 193.2(e) provides that an "objection that is not made within the time required . . . is waived unless the court excuses the waiver for good cause shown." *Id.* R. 193.2(e); *Bielamowicz*, 136 S.W.3d at 723.

Jaiyeola served requests for production by mail or facsimile on March 30, 2012. Allowing an additional three days to respond, since service was by mail or fax, Summersett's deadline to respond and object was 33 days later, on May 2, 2012. TEX. R. CIV. P. 21a, 196.2(a). Summersett responded by this deadline, but did not object on grounds that the documents sought were not within his custody or control.

Summersett counters this "waiver" argument by pointing out that Jaiyeola never made this argument to the trial court, and accordingly, we should not consider this argument on review. Summersett also contends that his responses were timely under Texas Rule of Civil Procedure 193.2(d) and 193.4(a). *See* TEX. R. CIV. P. 193.2(d) (allowing a party to amend or supplement an objection to written discovery that "at the time the objection or response was initially made, either was inapplicable or was unknown after reasonable inquiry"); *id.* R. 193.4(a) (concerning the timing for filing any evidence necessary to support an objection). Under the governing standard, the trial court's decision must be affirmed if it can be upheld under any legal theory finding support in the record. *See In re Williams*, 328 S.W.3d 103, 113 (Tex. App.—Corpus Christi 2010, orig. proceeding). Nevertheless, we assume for purposes of this opinion, without deciding, that Summersett's objection was properly before the trial court.

9

TEX. R. CIV. P. 192.3(a) & (b) (emphasis added). In short, Rule 192.3(b) provides that a party may request discovery of relevant documents and the other party is required to produce those documents that are within the person's "possession, custody, or control." *Id.* R. 192.3(b).

"Possession, custody, or control" of an item for purposes of discovery means that the "person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." *Id.* R. 192.7(b). According to the Texas Supreme Court, the phrase "possession, custody or control" within the meaning of Rule 192.3(b) includes not only actual physical possession, but constructive possession, and the right to obtain possession from a third party such as an agent or representative. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). The right to obtain possession is a legal right based on the relationship between the party responding to discovery and the person or entity that has actual possession. *Id.*; *Kia Motors Corp. v. Ruiz*, 348 S.W.3d 465, 487 (Tex. App.—Dallas 2011, pet. granted).

Because the discovery rules often apply to reach information not within a party's physical possession, a party may often not have actual knowledge of the existence of information or documents in the possession of others "but may be nevertheless obligated to gain knowledge of them." *In re Certain Underwriters at Lloyd's London*, 294 S.W.3d 891, 903 (Tex. App.—Beaumont 2009, orig. proceeding). Thus, in evaluating the scope of a given request to produce, the duty to produce is not always satisfied by producing the documents that are in the party's immediate physical possession but "may often extend to documents in the possession of persons or entities that are not

10

parties to the suit." *Id.* The party seeking production has the burden of proving that the relator has constructive possession or the right to obtain possession of the requested documents. *See GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729; *In re U-Haul Int'l*, 87 S.W.3d 653, 656 (Tex. App.—San Antonio 2002, orig. proceeding).

Summersett's contention that the trial court abused its discretion in compelling the production at issue is premised on the Texas Supreme Court's examination of the concept of "possession, custody, and control" in *In re Kuntz*, 124 S.W.3d 179. In *Kuntz*, the relator's ex-wife brought suit against the relator therein, her ex-husband, for enforcement, clarification, or amendment of the division of the marital estate. *Id.* at 181–82. As part of her share of the estate, she had received a percentage of overriding royalty interests that relator received "by virtue of employment or as a partner of CLK" from McMoRan Offshore Exploration Co. ("McMoRan"). *Id.* at 182.

The relator was a minority owner and the general manager of CLK and was one of the four members of CLK's board. *Id.* CLK evaluated oil and gas prospects for McMoRan. *Id.* After evaluating a property, CLK created and forwarded to McMoRan a letter of recommendation ("LOR") detailing its findings and recommendations. *Id.* A copy of each LOR was traditionally maintained in CLK's offices and relator and the other CLK principals had unrestricted access to those copies. *Id.*

The consulting agreement between McMoRan and CLK provided that data and information obtained or compiled by CLK for McMoRan belonged exclusively to McMoRan and prohibited disclosure of that data and information to a third party without McMoRan's written consent. *Id.* CLK's operating agreement obligated the relator to maintain the confidentiality of data and information acquired during his employment and

11

prohibited him from disclosing it to a third party without the written consent of CLK's board. *Id.*

Relator's ex-wife filed a motion to compel discovery, requesting that relator be ordered "to produce all LORs that are 'positive.'" *Id.* In response, relator asserted that he did not have possession, custody, or control of the documents and that the documents contained privileged matters belonging to McMoRan. *Id.* at 182–83. The trial court granted the ex-wife's motion to compel. *Id.*

In granting mandamus relief, the Texas Supreme Court noted that it was undisputed that relator's employer, CLK, had actual physical possession of the relevant documents, that the documents were owned by McMoRan, a client of relator's employer, and that McMoRan claimed the documents contained its privileged trade secrets. *Id.* at 180. The supreme court held that a person's mere access to a document does not constitute "physical possession" of the document under the definition of "possession, custody or control" stated in Rule 192.7(b). *Id.* at 184. In addition, relator's production of the documents would have violated the confidentiality agreement with his employer, CLK, and the consulting agreement between his employer and its client, thereby subjecting relator to potential liability. *Id.*; *see also In re Shell E&P, Inc.*, 179 S.W.3d 125, 127 (Tex. App.—San Antonio 2005, orig. proceeding) (following *Kuntz* in granting mandamus relief in favor of relators who had custody, but not possession within Rule 192.7, of documents belonging to Shell where the production of documents would violate a protective order and subject the relators to to a potential suit for damages by Shell).

We examine the facts of this case under the foregoing law. Summersett's argument and evidence assert that the requested documents are not within his "individual personal possession, custody or control" and "therefore" he cannot produce them because they are the property of Knapp. This assertion is premised on a misunderstanding of the applicable law. Summersett does not need "individual personal possession, custody or control" to be required to produce documents under the rules of civil procedure; rather, the law requires only that he have either actual physical possession, or constructive possession, or the right to obtain possession from a third party such as an agent or representative. *See GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 729. Unlike the facts in *Kuntz,* Summersett is the president and chief medical officer of Knapp. He has a right to possession of the requested documents that is equal or superior to any other employee of Knapp, including those employees who may be charged with maintaining records for Knapp. The affidavits filed in this cause do not suggest otherwise. Based on the record currently before us, there are no privileged trade secrets or protective orders at issue in this case, which further distinguishes this case from *Kuntz*. Further, unlike *Kuntz*, there is no confidentiality agreement here which would subject Summersett to potential liability for producing the requested documents.

After comparing the proof offered to support the objection in *Kuntz* and the proof offered by Summersett, we overrule Summersett's first issue.

### IV. MOTION TO DISMISS

By his second issue, Summersett contends the trial court erred in ordering him to produce documents because discovery was suspended pending final disposition of

13

Summersett's motion to dismiss under the TCPA. Summersett's motion to dismiss was filed on May 7, 2012. Summersett's motion for leave to file the motion to dismiss was filed on May 11, 2012. The trial court denied Summersett's motion for leave on June 6, 2012. Having denied Summersett's motion for leave, the trial court did not rule on the motion to dismiss. The order compelling discovery was issued on June 28, 2012. Summersett contends that discovery was stayed from May 7, the date that the motion to dismiss was filed, until, "at a minimum," July 6, 2012, the date that the motion to dismiss "was denied by operation of law."

Our resolution of this issue depends on the construction of the statutory language. Where the resolution of an issue requires us to construe statutory language, we review statutory construction de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *TDIndustries, Inc. v. Rivera*, 339 S.W.3d 749, 752 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Once we determine the proper construction of the statute, we determine whether the trial court abused its discretion in the manner in which it applied the statute to the instant case. *Rivera*, 339 S.W.3d at 752; *Capital One v. Carter & Burgess, Inc.*, 344 S.W.3d 477, 479–80 (Tex. App.—Fort Worth 2011, no pet.). In this regard, a trial court has no discretion in determining what the law is or in applying the law to the facts. *In re Frank Kent Motor Co.*, 361 S.W.3d 628 (Tex. 2012) (orig. proceeding).

Section 27.003 of the TCPA is entitled "Motion to Dismiss." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003. Under this section, "[i]lf a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action." *Id.* § 27.003(a).

14

A motion to dismiss a legal action must be filed not later than the sixtieth day after the date of service of the legal action. *Id.* § 27.003(b). The court may extend the time to file a motion under this section on a showing of good cause. *Id.* On the filing of a motion to dismiss pursuant to section 27.003(a), all discovery in the legal action is suspended until the court has ruled on the motion to dismiss, except as provided by section 27.006(b). *Id.* § 27.003(c). Section 27.006(b) states, "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b). If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by statute, the motion is considered to have been denied by operation of law and the moving party may appeal. *Id.* § 27.008(a).

The record before us indicates that the trial court denied Summersett's motion for leave to file the motion to dismiss on June 6, 2012, and subsequently, on June 28, 2012, entered the subject order compelling discovery. The trial court did not grant the motion for leave and did not enter an order denying the motion to dismiss. The plain language of the TCPA does not contemplate staying discovery pending resolution of a motion for leave or extension of time to file a motion to dismiss. Accordingly, the trial court did not abuse its discretion in granting Jaiyeola's motion to compel. We overrule Summersett's second issue.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response thereto, the reply, and the applicable law, is of the opinion that relator has not met his burden to obtain mandamus relief. *See In re Prudential Ins.*

15

*Co. of Am.*, 148 S.W.3d at 135–36.  Accordingly, the stay previously imposed by this Court is LIFTED*.  See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided.").  The petition for writ of mandamus is DENIED.  *See id.* 52.8(a).

In so holding, we note that immediately prior to the oral argument of this cause, Summersett filed a letter with the Court "to advise the Court of circumstances that have changed since the filing of these appellate matters that may be relevant to the Court's analysis of the issues presented."  According to the letter, since the mandamus and related appeal were filed:  (1) Knapp has been acquired by Prime Healthcare Services; (2) Summersett is no longer employed by Knapp and is now employed by Prime; (3) Jaiyeola no longer practices at Knapp; and (4) Summersett's co-defendant in the trial court, Ruben Garza, is no longer employed by Knapp.

We express no opinion herein regarding these allegations.  Any contentions regarding the effect of these allegedly changed factual circumstances should be addressed in the first instance by the trial court.  *See, e.g., Henderson v. Floyd*, 891 S.W.2d 252, 255 (Tex. 1995) (orig. proceeding); *see also In re Emex Holdings L.L.C.*, No. 13-11-00145-CV, 2013 Tex. App. LEXIS 4802, at \*\*31–35 (Tex. App.—Corpus Christi Apr. 18, 2013, orig. proceeding) (mem. op. en banc).

_____
ROGELIO VALDEZ
CHIEF JUSTICE

Delivered and filed the
18th day of July, 2013.